# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **DENISE FLEMING** | ) |
| | ) |
| v. | ) |
| | ) No. 3:13-0198 |
| **NANCY BERRYHILL,** | ) |
| **Acting Commissioner of Social Security**[1] | ) |
| | ) |

## <u>M E M O R A N D U M</u>

Pending before the Court is a Motion for Judgment on the Administrative Record ("Motion") (Docket Entry No. 14) filed by Plaintiff Denise Fleming ("Fleming"), which includes an accompanying Memorandum in Support (Docket Entry No. 14-1). Defendant Commissioner of Social Security ("Commissioner") has filed a Response in Opposition to Fleming's Motion (Docket Entry No. 21), to which Fleming has filed a Reply (Docket Entry No. 24). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 28).

Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 10),[2] and for the reasons given below, Fleming's Motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

1

# I. Introduction

On May 28, 2008, Fleming filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging a disability onset of February 21, 2007. (AR 67-68). Fleming's claim was denied at the initial and reconsideration stages of state agency review. (AR 67-68). Fleming subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). The ALJ heard the case on September 30, 2011, at which time Fleming, who was represented by an attorney, gave testimony. (AR 37-38). Testimony was also received from an impartial vocational expert. (AR 37-38). On November 30, 2011, the ALJ issued a written decision finding Fleming not disabled. (AR 12). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since February 21, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia; degenerative disc disease; and depression (20 CFR 404.1520(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of medium work as defined in 20 CFR 404.1567(c). Claimant can lift and carry 20 pounds frequently and 50 pounds occasionally. Claimant can stand and/or walk for up to 4 hours at one time or total in an 8 hour day; Claimant can sit up to 8 hours a day; Claimant is able to understand and remember and sustain concentration, persistence and pace for simple and lower-level semi-skilled tasks. Claimant is able to interact with the public, supervisors and co-workers. Claimant is able to adapt to changes in the workplace with only occasional difficulty. Claimant can set limited goals.

***

6. The claimant is capable of performing past relevant work as a cashier/checker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

***

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2007, through the date of this decision (20 CFR 404.1520(f)).

(AR 17-28).

On February 2, 2013, the Appeals Council denied Fleming's request for review of the ALJ's decision (AR 1-3), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II.    Review of Record

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.    Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the Commissioner to determine whether substantial evidence supports the Commissioner's findings and whether the correct legal standards were applied. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from

its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

## B. Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The Commissioner considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

4

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that she has done in the past will not be found to be disabled.

5. If a claimant cannot perform her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. § 404.1520. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The Commissioner can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability,

the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *see also Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

**C. Weighing Medical Source Evidence**

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In *Gentry v. Comm'r of Soc. Sec.*, the Sixth Circuit restated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule" ... requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to

6

> 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors .... In all cases, the treating physician's opinion is entitled to great deference even if not controlling .... The failure to comply with the agency's rules warrants a remand unless it is harmless error ....

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. *Id.* at 724 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany-Johnson v. Comm'r of Soc. Sec.,* 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports."). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. *Gentry*, 741 F.3d at 729 (citations omitted); *Grubbs v. Comm'r of Soc. Sec.*, No. 12-14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to perform any work.").

**D. Fleming's Statement of Errors**

**1. Whether the ALJ Failed to Give Appropriate Consideration to All of Her Severe Impairments.**

Fleming contends that the ALJ failed to give appropriate consideration to all of her impairments. (DE 14-1 at 9). Fleming specifically claims that, while the ALJ considered her fibromyalgia, degenerative disc disease, and depression, he failed to give appropriate consideration to her other impairments, including diabetes mellitus, plantar fasciitis, tarsal tunnel syndrome, pulmonary embolism, obstructive sleep apnea, diabetic peripheral neuropathy, pernicious anemia, and thrombocytopenia. (*Id.*). However, the ALJ specifically explained his determination that none of these additional impairments was severe. For example, the ALJ noted that "the record shows an 80% improvement in her plantar fasciitis when cortisone injections; orthopedic inserts and ibuprofen were implemented, manageable diabetes, cholesterol, and hypertension when with prescriptive medications and compliance; the relief of the blood clot causing her embolism; and routine and mild treatment" for the remaining alleged impairments. (AR 17-18). Plaintiff's brief simply cites office notes that include diagnoses, none of which demonstrate that such conditions represent severe impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (diagnosis of a condition "says nothing about the severity of the condition"). Accordingly, the Court finds that the ALJ gave appropriate consideration to all of Fleming's alleged impairments.

**2. Whether the ALJ Failed to Give Appropriate Consideration to Treating Providers.**

Fleming claims that the ALJ erred by not giving controlling weight, as required under Social Security Ruling ("SSR") 96-2p, to the October 15, 2009 medical source statement ("MSS") completed by Dr. Bryan C. Lewis of the Murfreesboro Medical Clinic. (DE 14-1 at

10).³ While the ALJ gave Dr. Lewis's MSS little weight, he highlighted the inconsistencies in Dr. Lewis's responses to questions about Fleming's ailments and limitations, as well as the fact that Dr. Lewis's opinion "appears to be based on claimant's subjective complaints and not the objective medical evidence of record." (AR 24). For example, Dr. Lewis based his opinion on Fleming's complaints of pain at a level of eight out of ten and alleged peripheral neuropathy, while an electrophysiological evaluation performed by Dr. Richard Rubenowicz in September 2009 revealed no signs of neuropathy. (AR 24). The "treating physician rule" only requires the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 474188, *2 (July 2, 1996) ("Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record."). Given that the ALJ specifically identified inconsistent "medically acceptable clinical and laboratory diagnostic techniques" in the record, the Court finds no error in the ALJ's analysis.

Fleming also claims that the ALJ erred by not giving controlling weight, pursuant to SSR 06-03p,⁴ to a December 14, 2008 letter from Angela Allison, a school social worker who knew Fleming on a "personal and professional level for five years." (Doc. No. 14-1, at 10-11). This argument is erroneous for multiple reasons. For one, the very ruling Fleming cites, SSR 06-

---

³ SSR 96-2p has been rescinded effective March 27, 2017. However, because this action was filed in March of 2013, SSR 96-2p applies to the Court's analysis.

⁴ Like SSR 96-2p, SSR 06-03p has also been rescinded effective March 27, 2017, but applies to the Court's analysis.

03p, clearly states that "only 'acceptable medical sources' can be considered treating sources." 2006 WL 2329939, *2 (August 9, 2006). Additionally, the ALJ noted that Allison's opinion would be treated as lay opinion because her relationship with Fleming "is mostly social, rather than clinical, in nature" and the "record is also absent any official documentation, showing claimant under" her medical care. (AR 26). Plaintiff's brief argues simply that Allison "was in favor of the claimant being found disabled" (DE 14-1 at 10-11), an opinion that would have little bearing on the ALJ's analysis even if Allison was an acceptable medical source. *See Christman v. Sec'y of Health & Human Servs.*, 9 F.3d 106, 1993 WL 424860, at *1 (6th Cir. 1993) (table) ("The regulations indicate that 'a statement by your physician that you are *disabled* or *unable to work* does not mean that we will determine that you are disabled.'") (citing 20 C.F.R. § 404.1527) (emphasis in original). Given that Fleming provides no basis for the proposition that Allison's opinion should be afforded controlling weight, nor any records indicating that she received any treatment from Allison, the Court finds no error in the ALJ's analysis.

### 3. Whether the ALJ's RFC Determination is Inconsistent with the Medical Evidence.

Fleming claims that the ALJ's failure to "properly consider" her "impairments related to her feet; swelling; and the use of Coumadin ... negate" the RFC. (DE 14-1 at 11). Fleming claims that the ALJ failed to make a "global consideration of the evidence," which she claims "support[s] an RFC finding of less than sedentary." (*Id*. at 12). However, most of the medical records cited by Fleming do not reflect the use of Coumadin or foot-related impairments, and the ones that do mention only that she is taking Coumadin, not that she suffers from any disabling impairments that would affect her RFC determination.

Regardless, the ALJ addressed Fleming's related foot swelling problems in both the hearing and opinion. During the hearing, Fleming explained that she could only stand and sit for

about an hour due to fibromyalgia. (AR 50) ("standing with the fibromyalgia, the swelling that I have with my ankles and feet, so I'm not able to stand for very long."). In the opinion, the ALJ found that, despite Fleming's claim that fibromyalgia is the source of chronic pain all over her body, including her feet, "the record does not completely corroborate claimant's allegations of the severity and persistence." (AR 22). The ALJ discussed numerous medical records from multiple treating providers that contradict Fleming's claims as to the severity of her condition, including notes from Dr. Asim Razzaq, her treating rheumatologist. (AR 22). The ALJ also noted that even the opinion of Dr. Janet Pelmore, whose examination rendered the most specific findings with respect to fibromyalgia, did not identify any limitations in her assessment that were more restrictive than those included in the RFC. (AR 22-23). Contrary to Fleming's argument that the ALJ failed "to properly consider" her impairments related to her feet, swelling, and the use of Coumadin, the Court finds substantial evidence of record that these circumstances were properly considered by the ALJ, and this assertion of error is therefore rejected.

### 4. Whether the ALJ Failed to Properly Evaluate and Assess Fleming's Statements as Required by SSA 96-7p.[5]

Fleming next claims that "the ALJ merely stated that he used the criteria outlined in SSR 96-7p in reaching his decision, rather than specifically stating the weight he gave" to Fleming's statements and the reasons for that weight. (DE 14-1 at 13). However, Fleming fails to cite any portion of the ALJ's report or administrative record to support her claim that the medical evidence "shows that the Plaintiff is disabled." (*Id.* at 14). Where a party fails to cite to the administrative record in support of her argument, it is not the task of the Court to scour the record on that party's behalf. *See Markel v. Comm'r of Soc. Sec.*, No. 13-11196, 2013 WL

---

[5] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed March 6, 2013, SSR 96-7p applies to the Court's analysis of this claim.

11

5854467, at *3 (E.D. Mich. Oct. 30, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ((("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.")  In the absence of any argument from Fleming explaining how the ALJ failed to comply with SSR 96-7p, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

> **5. Whether the ALJ Improperly Failed to Give Significant Weight to the Consultative Examination Report Completed by Alice Garland.**

Alice Garland, M.S., conducted a consultative examination of Fleming on September 5, 2008 and concluded that her ability to persist and concentrate was moderately limited, but "could quickly exacerbate to markedly under stress and extra stimulation." (AR 421).  The ALJ gave "little weight" to Garland's opinion because it was based on a single evaluation, Garland did not have any treatment history to know how Fleming reacts to or tolerates stress, and her opinion was "inconsistent with the evidence as a whole."  (AR 26).  Fleming claims that the ALJ's rejection of Garland's opinion was insufficient because the vocational examiner testified that—with a restriction on stressful and stimulating activities—there would be no jobs that Fleming could perform. (DE 14-1 at 15).

Fleming argues that the ALJ's reference to Garland's opinion being based on a single examination was an "insufficient reason to discount" her opinion. (*Id*. at 15), yet fails to cite any regulation or opinion to support her suggestion that the ALJ was required to provide "good reasons" for discounting the opinion.  20 C.F.R. § 404.1527(c) states that the ALJ must prove good reasons "for the weight [he] give[s] your *treating physician*" (emphasis added).  There is no requirement that the ALJ apply this standard to consultative examiners.

12

Additionally, Fleming incorrectly suggests that the single examination was the sole reason for the limited weight given to Garland's opinion. As noted above, the ALJ appropriately noted that Garland lacked Fleming's treatment history when she rendered her opinion, and that her opinion was inconsistent with the record as a whole. *See Spencer v. Comm'r of Soc. Sec.*, 2013 WL 5507332, at *5-6 (N.D. Ohio Oct. 2, 2013) (holding that because the consultative examining physician's was not supported by objective medical findings and was contradicted by the evidence of record, the ALJ correctly concluded that the opinion should not be afforded considerable weight).

The ALJ instead gave significant weight to the February 10, 2010 consultative examination of Dr. Thelma Foley (AR 801-03), who determined that Fleming's mental limitations were relatively mild in nature. (AR 25). The ALJ specifically referenced Dr. Foley's finding that Fleming's concentration and persistence were "adequate," and that she exhibited no signs of stress exacerbation issues. (AR 25). The ALJ also discussed his reasons for according greater weight to Dr. Foley's opinion:

> [T]he contradictory findings between Ms. Garland and Dr. Foley reveal improvement by claimant. Ms. Garland's evaluation was over three years ago and by claimant's own assessment, she is [now] "doing much better." The discrepancy also shows that claimant's initial allegations of severity and persistence are not entirely credible. Based on the totality of the evidence, the undersigned has assigned appropriate limitations in the [RFC] set forth above, and no greater limitations are supported by the evidence of record.

(AR 25). Fleming fails to acknowledge this analysis in her brief, nor does she reference any evidence to support Garland's opinion. The Court therefore finds no error in the ALJ's determination.

### 6. Whether the ALJ Failed to Ask the Vocational Expert if his Testimony Was Consistent with the Dictionary of Occupational Titles.

Fleming claims that the ALJ failed to ask the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. (DE 14-1 at 15). Fleming appears to have overlooked the ALJ's specific request during the hearing that the vocational expert indicate whether his testimony was consistent with DOT. (AR 57). Indeed, the ALJ directly asked the vocational expert the following: "Do you understand that if your testimony varies from [the DOT] you are required to tell us and explain your answer?" (AR 57). Notably, Fleming does not include this argument in her reply brief, which suggests that she has realized her folly. This assertion of error is thus rejected.

### 7. The ALJ Failed to Properly Consider Third Party Reports.

Fleming finally claims that the ALJ failed to consider letters from her friend and hairdresser, Annie Blackman, and her sons, Kenny and Chris Fleming, which describe her condition as severe in nature. (DE 14-1 at 16; AR 449-51). Fleming again appears to have ignored portions of the ALJ's opinion, as the ALJ devoted an entire paragraph explaining the weight he gave to these opinions:

> Claimant's family and friend all offered letters and opinions that were generally consistent with claimant's own testimony and allegations. However, none of them is medically trained to make exacting observations and the accuracy of their opinions is unsupported. Moreover, by virtue of familial relationship and friendship, they cannot be considered a disinterested third party whose opinion would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations alleged by the claimant. Most importantly, significant weight cannot be given to their opinions because, like claimant's, [they are] not consistent with the preponderance of opinions and observations by medical doctors in this case.

(AR 26). Fleming's argument is therefore meritless.

## IV. CONCLUSION

For all of these reasons, Plaintiff's motion for judgment on the administrative record (DE 14) is DENIED. An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge